I again want to thank the Honorable Richard Stearns, who is a very distinguished judge from the District Court of Massachusetts, who has graciously and gracefully consented to sitting with us here today and yesterday and giving me a chance to get to know you. So, Judge, thank you again, and Rebecca and Marsha, thank you. If I could lend my voice to that as well, Judge Stearns is, let's say, an old friend. Not an old friend, but a friend of many, many years, and it's great to have him here in the Third Circuit. Well, this is the most welcoming Circuit I've been to. Well, you're going to get a lot more of it if you come back. I thought you'd want to get your back here. First matter is Children's Prison Foundation versus Danielle, I'm not, I've had trouble with this pronunciation, is it Legreide? Yes. Is that how, okay, thank you. May it please the Court, my name is Jeff Schaefer on behalf of the appellants in this matter. I'd like to reserve four minutes of my time for Rebecca, if I may. Thank you, Your Honor. As set forth in the complaint, defendant's agent stated to Children's First Foundation that its specialty plate application was denied because the phrase that appears as part of its copyrighted logo, that is, Choose Life, was too controversial and political. Mr. Schaefer, I know I'm interrupting you, but I want to start really at the very beginning, and it may simply be a matter of clarification, but it was not apparent to me, from my own reading of the district court's opinion, that the district court here was dismissing the entire complaint. It got the case back from a panel, from a motions panel of this court, relative to the qualified immunity issue. And then the opinion seemed to focus entirely and only on the qualified immunity issue, which of course would not extend to the claims for injunctive relief and declaratory relief. Now if it did confine itself only to that, and if it did not dismiss the other claims, then we don't have jurisdiction. Now I'm certainly assuming, because we haven't heard anything from either of you, the contrary, that that's not the position of the parties here, but for clarification, could you tell me how the district court has indeed addressed all of the claims in that opinion? That's right, Your Honor. It's very difficult to assess the district court's analysis simply because it doesn't make a great deal of sense under the governing analysis. The court, it did indeed dismiss the case, there's no question about it. The case was closed, it's off the dock, it's over. Well it did, but for instance, in its own conclusion, it says, for the reasons stated above, it is therefore the finding of the court that the defendants are entitled to a qualified immunity defense. Therefore defendant's motion to dismiss plaintiff's amended complaint, therefore defendant's motion to dismiss plaintiff's amended complaint is granted in appropriate order follows. So the explicit nature of that did not seem to go to anything other than qualified immunity, just as the order simply said, order that defendant's motion to dismiss plaintiff's amended complaint on qualified immunity grounds is granted. Yes, Your Honor, and this is where it seems that the district court did not acknowledge the distinction between the two. It went ahead and got rid of the entire lawsuit as if that was an appropriate way of dealing with a qualified immunity defense. What the court did, and I hope I elaborated this somewhat in the brief, is while it went on to the second prong of Saucier, which would seem to suggest that it thought there were some claims that existed, it nonetheless found no claims had been registered. So it kind of did two things at once. It said the court in its opinion said that there is no viable constitutional claim presented here and qualified immunity defense therefore applies. It's nearly inscrutable. Did you take that first statement to mean that equitable relief had been... Yes, obviously the basis for equitable relief has to be upon the presentation of viable constitutional claims. So if there were no constitutional claims, no equitable relief could result. The court meant to decide actually both issues. Because the court dismissed... That's right, because the court dismissed the entire action, again, it was a confusing presentation I think, but indeed the court got rid of the entire case. It was taken off the docket. It was done. And that confusion, I think, is exhibited in a number of ways. The way the court handled not only that issue, but a number of the other governing standards, which I think led to some of the mistakes it made. The district court did address the Saucier Step 1 analysis too, though, did it not? It did, Your Honor. So isn't that essentially a proxy, or couldn't we read that essentially as a proxy for getting to whether or not there was a claim? That's the very nature of Saucier. That's right. At that time, obviously, the court would have been required to look at Prong 1 before Prong 2. But the interesting thing was in Prong 2, its announced conclusion was not, this is not clearly established, which is the question in Prong 2. What the court said was there was no constitutional violation at all. And the court in a number of places dismissed the various claims that were registered. They dismissed it pursuant to 12B6. That's right. Saying that the complaint itself did not present an adequate claim in the case. Are there any? I'm sorry, go ahead. No, exactly. What type of qualified immunity do you think was being granted? We have obviously two types. There's immunity from damages. And then, of course, there's immunity from discovery. Do you think the court intended both, or just the damages issue? Well, sure. I mean, I think the two are together. Obviously, they're both components of qualified immunity. But because they're immune to damage claims against them, they are accordingly immune from discovery. Although it's kind of a theoretical distinction in this case, because at least one of the actors will be subject to discovery nonetheless in her official capacity in this case. Well, what was the initial appeal to this court? Was from an order of the District Court of New Jersey doing what? The first time this case came up, it was because the District Court had denied the state's or the individual defendant's motion for qualified immunity. Right. So the District Court essentially got marching orders from a motions panel of this court sending it back. That's correct. And accordingly, Judge Pisano then addressed. Who was the second judge in the case. Who was the second judge, not the first judge on the District Court to address the matter. That's correct. He essentially followed those marching orders and addressed the qualified immunity. Yes. And the unique thing is he didn't limit himself to the second question. And obviously, as part of the qualified immunity analysis, there are two steps, the first of which is to determine whether there's a constitutional claim presented at all. Well, that's what the court entertained. That used to be there. That used to be there. Right. At the time of the decision that was brought. You alleged in your complaint because trying to put the case together with the allegations and the 12B6 foster is not that helpful. You alleged in your complaint you point discrimination. That's correct. That you were denied the right to have this plate because of the content of the plate's message. That's correct. But there are, and I don't know how we get to it on 12B6 context, but there was a counteroffer, as I understand the record, from the administrator suggesting other language which she would find, I guess, not as controversial or acceptable, which seemed to advocate, in quotation marks, the very same viewpoint that you're saying was the motive for denying your license plate. Not exactly. Just because evidently the decision makers, the defendants in this case, saw that there was a difference in level of controversy between the two, and actually that was part of the statement made by the defendant's agent to the Children First Foundation. It was, this is too political and controversial, your logo as it exists now, but if you diminish the controversy and instead place an alternative presentation of speech on your logo, that will be approved. For instance, we would allow fund adoption or adopt a baby or choose adoption. What's wrong with that? Because if the issue here is not, from the record, I understand your allegation, and again, the 12B6 mix is real hard to get to, but if the record here showed that the reason for turning this down was just what the administrator said, not what your message was, but the fact that your message was controversial, so that the reason for turning it down was, if you will, subject matter, i.e., controversy, and that arguably the same result would have happened had a group wanted to have a license plate that said support choice, and the administrator said, no, that's too controversial. You're not suggesting the administrator does not have the right within the First Amendment to reject messages that she believes to be too controversial to put on an official license plate? No, yeah. Well, actually that is what I'm suggesting, and what the Supreme Court has repeatedly suggested, which is that the government may not regulate speech. As a matter of fact, the court says in Rosenberger that it's axiomatic that the government may not regulate speech based on that. What kind of a forum, though? It doesn't matter, as the Supreme Court said. So you reject the notion that there could be a content-based determination by the state or by the director that we're just not going to go there? Well, we're not going to entertain any viewpoints on this particular issue. Well, first of all, I would say that's an impossible standard that we're not going to entertain any viewpoints. All right, but that's not my question. Okay, but specifically as to the question of whether a forum could be set up that excluded certain things, I think yes, theoretically that's possible, but the legislature has not imposed those sorts of standards on us. Okay, I understand, but so I understand. I want to understand your theory here. And putting aside for the moment any kind of facial attack on the statute, is your theory in this case simply pretext? What happened here in the iteration of events that you set forth in the complaint was, in fact, a pretextual action or actions by the director to cover up what you contend was viewpoint discrimination. Yes, I would say what we allege in the complaint is the real justification for what happened because that's what was communicated to my client at the time. But the subsequent explanation, which came five months after that. Well, June 3 of 03, you have your design approved, right? And then subsequently there was a denial. That's step one. And then the following month, then there's an indication from the directive that it's not approved because it's too controversial. That's right. And then after that, the check with the application was actually negotiated, right? It's cash. That's correct. So there was some disconnect in there evidently. Can I go back to the forum? Sure. I do think a forum analysis is appropriate. If it were a non-public forum, then you'd agree content discrimination, not viewpoint discrimination. That's right. Content discrimination. I thought you told me you would not agree with that. You're arguing with that now? Well, actually, I took your question to be whether there could be viewpoint discrimination, specifically whether controversy could be eliminated. Right, but I don't call that viewpoint discrimination. Well, the Child Evangelism Fellowship case, this court did say that that is, let me see if I can quote. Again, if the administrator would disallow a plate that said choose choice as well as one that said support life, you don't have any content discrimination in terms of viewpoint. If the legislature initiated that standard for the forum, that could be the case if it were content discrimination. But what we don't have here is content discrimination. The announcement, again, we have to look at what was alleged in the complaint, was we will not allow this because it's too political and controversial. That, as this court said in the Child Evangelism Fellowship case, is viewpoint discrimination. Judge McKee, could we put some more time on the clock, please? This is an important case, and I think we'll – No, I'll just turn the clock off. Okay. Both this case and the next case, I can't see getting to the kinds of issues and discussion we need to get to with any kind of time limitation. So we can put the clock on for the next case just so we have some idea of the time. And the counsel has an idea of the time, but I don't anticipate cutting anybody off as long as we're having a productive discussion. Sure. Thank you, Your Honor. I think it would be helpful to hear actually the quote from the Child Evangelism Fellowship case. The court said to exclude a group simply because it is controversial or divisive is viewpoint discrimination. A group is controversial or divisive because some take issue with its viewpoint. Now, that seems to be what's communicated by this. Again, let me interrupt you. Does that go to the kind of form that we're talking about? Right. If it's not a public forum, you still cannot disallow controversy. That's right, because the viewpoint prohibition – or, excuse me, the viewpoint discrimination prohibition extends to all forums. You keep saying viewpoint. Viewpoint discrimination, that's correct. As opposed to content. As opposed to content. It would have to be a designated or limited public forum for there to be a – That's what you think this forum is. That's what we think it is. But we would also say it's not necessary. I know you resist the idea of forum analysis, but I just don't see how that's going to actually happen at the end of the day. After discovery, I think it might matter, just not now. Different issue. Now, in the larger sense, let's go to a limited or designated forum. Now, there we know that the only regulation is one of reasonableness, right? Reasonableness under the designated form? In a designated forum, there can be some reasonable regulation of content. Well, it's interesting. In the formation of the designated or limited forum, there can be content exclusions. But once that forum is created, content cannot be excluded. You're the registrar of motor vehicles, and we have said that this is a designated forum. Sure. You're given – well, who's going to object to choose life? I mean, that's – these are – except for the secondary association, as we'd say in a trademark case, perfectly inoffensive. In fact, a salutary expression. But what does the registrar do when AmericanNaziParty.org has to have their plate observed? What does she turn to and say, well, no, I have to allow that? Does she? Well, the legislature presumably would have had some of these things in mind. Maybe they didn't draft the right statute. All of this can be rectified with a statute that kind of excludes things like this. One, I don't know whether the Nazi Party is a nonprofit organization such that it would qualify for admission. The other thing is I doubt they could come up with the necessary 500 members as well to get it right. They're all sure of that, if you take together all the various assembly groups, I suppose. Assume they can. But assume they can come up with all these. It is a nonprofit. It has the necessary membership and so on. The question, of course, would be whether this qualifies under terms of the statute. Now, if the regulation as it's set up would allow such a party to get access to a plate, then I would say, yes, the First Amendment requires as much. This, by the way, is not very surprising. The First Amendment exists not to protect speech that no one's bothered by in the first instance, rather it's that controversial nature that needs First Amendment protection. So I would think the legislature could draft a statute that could exclude such groups, but it hasn't in this instance. So you're saying here the problem is the unbridled discretion of the administrator? Absolutely. The administrator can't then come and say, I'm going to fix what the legislature didn't do by just coming up with my own reasons for doing this. And that's very clear. This is well-established law. The Supreme Court has indicated that it is precisely the sort of thing we see in this case that's a violation of the First Amendment. Cox v. Louisiana said, it's clearly unconstitutional to enable a public official to determine which expressions of view will be permitted and which will not by use of a statute providing a system of broad discretionary licensing power. So also the court said in the Shuttlesworth case, regulations governing a speaker's access to a forum must contain narrow, objective, and definite standards to guide a governmental authority so that such regulations do not operate as a prior restraint that may result in censorship. If we go back to my question, what you would say is that the only thing that really could be regulated would be non-speech, insanity. That's right, things that aren't protected by the First Amendment. So I would imagine that there may be fighting words that could be attempted to be brought into the forum that would probably be excluded. If I get my Confederate flag, I get the swastika, I get. Right, the Fourth Circuit has given. Unless it doesn't qualify as non-speech. That's correct. Mr. Schaffer, you've indicated perhaps several times the need for discovery in response to Judge Stern's question, pressing you on forum. You made reference to that. Have any of the license plate cases, and we have them, parties have cited to them from the Fourth Circuit, the Eighth Circuit, the Ninth Circuit, the Tenth Circuit, and we've got the Seventh Circuit and the Second Circuit, and we have finally the Sixth Circuit decision, which, as we all know, is a bit different. Have any of them gone by way of appeal from a 12B6 dismissal? I can't think of any case that has gone by way of 12B6 dismissal, with the exception of the Second Circuit case in Children First in New York, which was an unpublished opinion that was sent back down saying viewpoint discrimination is unconstitutional. Yes, this case can go to court. And that was just recent? I believe that was in 2005. Not more than that. But, again, it was a summary order, not a published opinion, so it might not have come to the Court's attention. But that is the only instance in which I can recall that the decision made by the Court was from a 12B6 motion. I believe that's subject to amendment. Doesn't that mean that basically, in terms of the procedural posture that gets you before us today, you'd have to lose? You may ultimately win on the merits, but in terms of how we're here – I'm sorry, let me back that up. I should ask you, given what you alleged in the complaint, it seems like you almost have to win, but it doesn't allow us to get to the underlying problem here. Yes, and what the Court would do is simply say there's an announcement by the agents of the defendants saying that this is the purpose. It's because you're too controversial. That's precisely an instantiation of viewpoint discrimination. Because that's the facts as we have them now, I would think we would have to win based on the clearly established – Well, but I think you may have gone too far. And, again, maybe you are resisting a form analysis, but I have the objection, I don't know how you avoid a form analysis, because to the extent that – and I know you're not conceding this – but to the extent that no controversial statement is allowed, period, and to the extent we find that it's a non-public forum, all they have to show is a reasonable basis for having that rule. And if they apply it equally so they're not focused on the viewpoint being expressed, then they're okay. But you're alleging that's not what they did, that they denied you specifically because of your viewpoint, i.e., two's life. That's right. It's too political, it's too controversial, let's make it less controversial. When you say too political, too controversial, that's different than what I'm saying. Because, again, if they were to say to your colleagues on the other side of this issue, they're not going to accept their license plate either because it's too controversial. I don't see why that wouldn't be reasonable if it's a non-public forum. Because both instances are a violation of the First Amendment viewpoint discrimination prohibition. The Supreme Court member in the Rosenberger case said, whether it's several viewpoints that are excluded or simply one, it's still you're targeting them not because we're excluding a subject, but because the viewpoints being communicated are controversial. Even if you go to both sides and shut it down, if your purpose is to eliminate controversy, that is the point you're making. I am, again, confused then, Mr. Schaffer, as to what your position is here. And I'm speaking only for myself. I am getting the sense that you want to win more on the constitutional point here, which I take to be a suggestion that the state could not remove this area of content, as opposed to wanting to win on the face of your specific pleadings, which when I read them, I thought, pleaded a case of pretext, i.e., what the state does not want us to do is have license plates that say, choose life. And so to prevent us from having such plates, they have obscured their position by taking inconsistent positions throughout this chronology. That's how I read you. That's how I read it also. But that is not now how I hear you arguing, or it's not how I hear you arguing with clarity. So I, speaking for myself, would like to know what your position is here. It's both, Your Honor, but it requires me to talk about them separately. We don't have to approach both, though. We don't have to rule on both, do we? Let us assume that this panel, at least at the 12B6 stage, agreed that you have made out a claim of pretext on the basis of viewpoint discrimination. Why do we need to go to this Rosenberger argument that you make? Well, the fact that there's a qualified immunity question that exists such that we need to be talking about, is the law clearly established? I was wanting to make reference. The law is clearly established that regardless of the form, the government can engage in viewpoint discrimination. That's why I was appealing to a case that said as much. That's the reason I was objecting. I mean, I was wanting to present some case law to the court that emphasized it. I think you'd always prefer the larger victory to the narrow one. Sure. Remind me. That's my sense. Of course I do, but I wanted to just focus on what's necessary in this procedural context. Obviously, the larger victory is what we're looking for. And remind me. Is the Seventh Circuit the only decision that says the license plate is a non-public forum period? Well, the Ninth Circuit said it's a limited forum. One of the interesting things. So between non-public and public. Well, it depends on what circuit you're in, what limited means. It could be a creature of non-public forum stats or it could be a creature of the designated. Do you have any doubt that the legislature could undesignate a forum? No, the legislature created it. It can choose. That's right. You have to choose it. Absolutely. What's interesting about this case, Your Honor, is that I think it's – what the legislature has done is it has invited in all of these viewpoints from various organizations. The forum itself was created by the legislature precisely for organizations whose reason for existence is to promote a particular social objective, which is informed by a point of view. So as I see it, it's really inescapable that the legislature was welcoming in a number of viewpoints as part of its intention for this forum. Remember who was invited in. It was nonprofit organizations that include community and service organizations. These are public interest viewpoint-laden entities. I think what happened was that they may have inadvertently done that in an effort to raise revenue.  What they're trying to do is raise money. Yes, perhaps so. But nonetheless, it did it. And because it has done so, whether – I don't know how to analyze this notice, whether it intended to do what it wrote or it wasn't anticipating certain objections. But nonetheless, we're left with what the legislature has given us, which is a forum open to nonprofit organizations who, as I said, are the type that are out there trying to better the public, be it Greenpeace or Americans United for Separation of Church and State or the Teamsters or the Marine Corps League, whoever. They all have points of view that they're advocating. The Marine Corps is probably as far away as you can get from a nonprofit entity. Well, that's a service organization, which is another category. And what's interesting is the administrative code defines a service organization entirely in terms of its viewpoint. It says its primary purpose is the advancement of U.S. military veterans' causes and interests or the honoring of veterans of the various branches. So, again, we're seeing this expectation that the groups that are going to come in are going to be kind of showcasing their names and positions and so forth. It seems to be inescapable that when a vehicle owner purchases and displays a plate that it can be anything other than displaying pride of association. So if we were to see such a plate, we'll know that the owner of that vehicle thinks that this organization, what it stands for, what it does is good. And for that reason, I think we have to look at what the legislature has done here as being an invitation for groups with particular points of view on social issues to get a plate. So I don't think that they had any intention of excluding a group like the Children First Foundation. So it was set up in a way that welcomes them. With the First Race Foundation. Sure. They could as well come in. What would the state have done if the actual name of your organization was just like that? Well, that's an interesting question. That's the name of the organization in Illinois, for instance. It's Choose Life Illinois. And that really gets to kind of the issue that I think is important. A name will often communicate a point of view. When we see Greenpeace or Gun Owners of America or, you know, any variety of organizations, it is communicating a point of view. We know what the teamster's position is on the controversy over right to work versus union labor. So I don't think you can pull apart a name from the presentation or position of the group. Mr. Schaefer, let me just shift focus for a bit, and that would be to the unbridled discretion argument. Have you raised that argument for purposes of making a facial challenge here? And if so, where and how have you done that, both in your amended complaint and in your brief? My recollection is that in both, what you did was raise the exercise of discretion with respect to the disapproval of children first. And those were the only references to this unbridled discretion. And so if that was the case, and if I'm correct, then if we were to determine that New Jersey officials did not exercise their authority in a viewpoint discriminatory manner, doesn't your claim fail if you've limited it solely to your situation? Well, Your Honor, I would turn the Court's attention to letter B in our request for relief. This is your complaint? The amended complaint. Where in the appendix? If the Court would allow me, I'll... Yes. Is it room number five? Letter B? I believe so, Your Honor. Page 71 of the joint appendix identifies the statutes and the administrative regulations and asks that the Court declare them to be facially unconstitutional under the First and Fourteenth Amendments. Because it's vague and vast, I assume. Unfettered. Unfettered. And I believe there are allegations earlier in the complaint that identify the fact that, indeed, there are no particular standards that restrain. So we do think we have a viable facial claim that exists independent of any sort of as-applied, although, of course, we stand behind our as-applied claim as well. Go ahead. If we go back to the unqualified immunity issue, just for a moment, you're not really pressing for damages so much, are you? Because you don't want to come home on the constitutional issue. I wouldn't want to waive our damages claim, obviously. The problem with your damages claim is that you tell me that the established right is a very generalized right to be freed from viewpoint discrimination. I don't think that's an accurate statement of the law. It doesn't have to be a precise prior replication of the exact facts in front of the official at the time the discretionary decision was made. That's right. I think something more than just a generalized right. At least the person I noticed in this particular situation is controlled by the prior law as opposed to just a general familiarity with what the First Amendment says. Well, the Supreme Court said in Hope v. Pelzer that a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though that action has not been previously held unlawful. Yes, but that doesn't answer the question because, again, the issue is at what level of specificity do we have to focus the prior precedent? Because you could easily say to a police officer in a Fourth Amendment context that he or she should know that you can't go into a home without a warrant. It's a different situation to ask whether or not, given the particular circumstantial issue, plain view, the officer looks in the window and sees what he thinks is contraband after he moves the curtains aside and then goes in. The issue is whether or not he should have known that he can't manipulate the window in his view in order to get plain view. That's a very different scenario, but yet they both arise from the very same constitutional provision. It seems to me it has to be a fair enough application of the doctrine to put the law enforcement officer or the administrator in a position where the law that's out there would arguably be known to apply as opposed to just the general vast body of law that we know about, but we can't say specifically that it applies to this situation. Dr. Darrow, Judge McKee's point into the facts of this case, if you were the registrar, was it 2004 when the decision was made, and you're not a lawyer, but you do know that you're supposed to look and see what the law says, wouldn't you come away with the view that, my God, these judges can't agree on what I should do? No. Is that by definition when qualified immunity applies? Well, remember the issue that we're analyzing. The question is can the administrator turn down an application because it thinks or she, in this instance, thinks that the message communicated is political or controversial? The disagreements among the courts have been is this government speech or private speech? Is it a tax injunction act application that would disallow litigation? All of these issues of disagreement don't bear on the very clear question. And every one of these cases, without exception, including the Sixth Circuit's decision, I might add, operates on the premise that viewpoint discrimination is not permitted. And I don't think it's such a broad rule, but it's a very specific one. Well, but the person in the main round of knowing what they were engaging in was viewpoint discrimination. It gets back to my earlier question. The administrator is saying, look, I'm not telling these folks they can't put the message on there because it says choose life. I'm telling them I don't want a controversial message on. And if these folks were saying honor a woman's choice, I would say exactly the same thing. And that's a very different presentation of the constitutional issue, isn't it? I think it's precisely – I mean, the Supreme Court has said that the government must abstain from regulating speech when the specific motivating ideology or the opinion or the perspective of the speaker is the rationale for the restriction. That's a very clear saying. Maybe we're talking past one another because in my scenario, I'm not sure the administrator would understand that under the law, what he or she is articulating is what you're defining as viewpoint discrimination. They simply say, no, I just don't want anything giving rise to controversy on license plates. And then you might even get into a form analysis. But I'm not sure – if we were to write an opinion that looks at the test that broadly, it seems to me the qualified immunity would become so absolute that it would create a situation that was not intended. That it's way beyond what the doctrine was intended for. I'd have to take issue with that, Your Honor, because what the doctrine says is you cannot discriminate against speech because of its message. That is presumed unconstitutional. This was discrimination because of the message. Okay, we are talking past one another because, again, the administrator is saying it's not the message here. It's the fact that what the person is saying gives rise to controversy. I'm not doing this because I don't believe in choice or I don't believe in – Oh, that's not it, Your Honor. It's not a disagreement with the message. It's opposition to the message for some reason because of the message. Okay, well, let me rephrase what I said. It's not that I'm doing this because, but because they don't want that message conveyed. I do think we're talking past one another. It seems to me that the qualified immunity thing has got to be more narrowly looked at than you're arguing. What I'm suggesting, though, is this is not – there are not two categories. One is I want to avoid controversy, and the other is I want to avoid viewpoint. They're one and the same. I know that. And the issue is whether or not a person would have reason to understand where the law was in that area. It's a message-directed censorship. That is pristine instantiation of viewpoint discrimination under the law. I mean, I don't want to, you know, keep reiterating it. Let's go back to the discovery problem, but couldn't she have thought, well, since I'm going to not allow the National Organization of Women to put up their message, That's exactly my point. Right, and the Supreme Court said no. Because you are suppressing viewpoint, it doesn't matter whether you're suppressing both sides of an issue. It's not a – you're not eliminating a subject matter from discussion in a forum. You're targeting viewpoints, both of which you think are controversial. And when you do that, it's viewpoint discrimination. Qualified immunity doesn't say that you're not wrong. It means that you might have had a reasonable basis. Which has to – depends on what has the case law said before you. Here it might depend on discovery. And the form. Yeah, it could. I mean, if we have – if the court were to find later on after the facts have come in and we can actually start looking at weighing whether factual findings are correct or not, when we're not just limited to the presentation and the complaint, then would be the instance where we could say, what kind of form is this? We've now gathered everything together. We're now competent to decide the kind of form. But I think that needs to be pushed off until later rather than being a component of what we're doing now. Thank you. Thank you, Your Honor. We'll have you back on rebuttal. Because we reserved four minutes, under the impression that you were going to be limited in time, don't feel compelled to take four minutes of rebuttal. Very well. I understand. Thank you, Your Honor. Don't feel compelled to take more than four minutes. May it please the Court. I'm Andrea Silkowitz, Assistant Attorney General, representing the State Appellees in this matter. Let me ask you what I inadvertently asked Ms. Schaefer. Given the 12B6 posture here, given what they've alleged, how can you possibly win on the procedural issue? If they're alleging that the reason that the license plate was turned down was because of their message and that what was said in turning it down was a pretext for discrimination against their viewpoint, and that's what we have to under 12B6 accept, then how can you win? Your Honor, I have several responses to that. One good one would be the one you've made. Okay. First of all, that is their legal contention. But what we have before the Court is a very detailed complaint with very detailed factual allegations and reference to an administrative record, which has been provided in the joint appendix. There also has been reference to matters that we believe the Court appropriately can consider on judicial notice. So you don't simply have the words that are set forth. Excuse me. What are you asking us to judicially notice? The District Court, and I think this Court as well, can reference the motor vehicle websites, which indicate what specialty plates have been approved and remain available. And I think the Court utilizing that, utilizing the administrative record, the correspondence between... Unless there's a plate out there which is tantamount to the message of choose life, and maybe there is, unless it's out there, how can that help you? The fact that in the past approved slogan-like things which suggest an underlying controversy seems to me is exactly what Mr. Schaffer is arguing. Your Honor, the administrative record, the communication, and the two final decisions of Ms. LaGreed indicate that the approach that she was taking and the interpretation of the statute that she was advancing was that the purpose of the specialty plate program was to provide identification of a member of an approved organization, and it was not to permit any supplemental advocacy message. Pursuant to that interpretation of the statute, Ms. LaGreed approved the plate. What we're dealing with here is not denial of access to a forum. As we've emphasized, her correspondence and her final decisions make clear that they approved the organization as appropriate, and they also approved the identifier that was presented in the correspondence, and that is FundAdoption.org. They had presented a plate which on the bottom rim did not have Children First Foundation but rather had FundAdoption.org, which at the time was the only legally approved alternate name of the organization. It's also at that time and continues to be the website for this organization. It also was a phone number and fax number, and the position that was advanced by the director and by the chief administrator in this case was, as with all the other specialty plates that I have approved or my predecessors have approved, I am authorizing you to have a plate which identifies your organization with the name that you have selected, with the name in your correspondence with me that you have utilized. Throughout the correspondence in 2003, there was only the appearance of FundAdoption.org. That's what she said because you're omitting anything that she said about controversy. She did not say that, and the allegation of the complaint is not that Director LaGreed made that comment. The allegation is that a lower-level employee of the agency made that comment, and Judge Padano concluded that because the statute reposes with the chief administrator the final and sole discretion to determine the use and arrangement of the language that's going to appear on the specialty plate, that her decision in November 2003 superseded any comment that was made, and we would maintain that that is an appropriate reading of the statute. I'm not so comfortable with that, but just to move on. My organization is 2-5. Do I get approved? The director would have to first determine whether or not you qualify under the statute in terms of being a nonprofit. I otherwise qualify. I have 501 members, and that's my organization. I'm in Illinois. My organization is 2-5. The chief administrator would have to review the correspondence, the charter, whether, in fact, this was the identifier of the organization. But that's my name, and I otherwise qualify. The director would then have to consider, given this particular program. She would have to consider the message that's the name of my organization. She would have to consider this program in conjunction with the other legislative programs, and as we've indicated in our brief, there have been a number of attempts through the New Jersey legislature, through their own program for CAUSE license plates, where they have not approved Choose Life license plates. And the determination would have to be made under the state statute, whether considering the action of the legislature in that regard, whether or not that signified a determination by the New Jersey legislature that they were bowing out of the abortion debate. Effectively, that is what the Seventh Circuit concluded in Choose Life Illinois v. White, that it was appropriate and not viewpoint discrimination and consistent with the conduct of regulation of a non-public forum for a legislative body or a state agency to determine that license plates are there for identification purposes and not for engaging in any type of debate as to an issue as hotly disputed as the abortion debate. And the Seventh Circuit concluded in reversing the district court that that did not constitute viewpoint discrimination within the non-public forum. Are you arguing that the legislature could mandate or approve a controversial message about a protection law? Would the legislature have that power without going over a constitutional court? The legislature could determine what would be appropriate within this particular forum. It could be a message. They have, in fact, adopted. They have in the statute as we've laid out, that there are a number of causes that the New Jersey legislature has approved for license plates. But I see where you're going. If you're saying that the legislature could approve certain causes and therefore I'm assuming you're conceding certain messages that are identifiable with those causes, such as the example you're being given now, and at least inferentially thereby disprove opposing causes or opposing messages, Well, doesn't that put you right smack dab under the bus? No, no, Your Honor. I'm not suggesting that. If they can approve messages X and causes X, that means they're not approving anything other than causes X? No. What I'm saying is that under the Seventh Circuit's opinion, the legislature appropriately could determine that for a non-public forum, such as a specialty plate, that there might be certain topics, certain areas of controversy that they did not want to be discussed on these license plates. The Seventh Circuit's opinion in white was an appeal from summary judgment, wasn't it? Yes, it was, Your Honor. It would not be permissible. The ruling by the Fourth Circuit in the Rose case was that the legislature would engage in viewpoint discrimination if it only allowed access to one viewpoint. In that case, they allowed for a state license plate that had choose life. They refused to enact proposed legislation that would have allowed for a pro-abortion viewpoint. And what the argument that was advanced was that the pro-abortion groups could go to the motor vehicle agency and get an organizational plate. And what the Fourth Circuit concluded was, you know, that is viewpoint discrimination because whereas you have the legislature endorsing the pro-choice view on its license plate, the pro-abortion group's view would be in that particular legislative scheme, you could not have a for-cause message. You were limited to an identification of the organization. And because the two viewpoints on the identical subject were being dealt with in different ways, in significantly different ways, the Fourth Circuit concluded that it was viewpoint discrimination. In this case, on the record that is before this court that is referenced in the administrative complaint, we have correspondence from Chief Administrator LaGreed disapproving only one portion of the proposed design of this organization's plate. Are you saying that we have to focus on that to the exclusion of other things alleged in the complaint? No, Your Honor. I just wanted to point that there also is included, and the court can take notice, of the letter that was sent at the same time to another organization, the Center for Food Action. And in 2001, their plate had been approved with an additional supplemental message, drive out hunger. At the bottom of the plate was the approval of the organization, Center for Food Action, and then a supplemental message. There was an allegation in the complaint that Dr. Rex's proposed design was not considered in the same way as this one, as the one by the Center for Food Action. However, there is a letter that the court can take notice of and Judge Pisano took judicial notice of, that a final agency decision by Chief Administrator LaGreed advising the Center for Food Action that her predecessor had inappropriately approved the drive out hunger slogan. And because of that. We can take judicial notice that that's what she said, but does judicial notice get you to the next step that in fact that's what she meant, or that in fact it was a truthful and accurate statement? It is, Your Honor, because the current website that has been included in the appendix reveals that the Center for Food Action's plate is no longer available. And so, therefore, when you look at the allegations of the complaint, the challenge is that CFS has been treated in a dissimilar way than any other specialty organization. That is not so. They were treated in the same way as the Center for Food Action, like other organizations that have been approved. They were given approval to have a specialty plate with the identifier of the organization, fundadoption.org. And it's our position that by providing them access to the forum, by providing them the opportunity to utilize the identifier of the organization that they selected, New Jersey is treating them identically to any other specialty. I'm having a little trouble with the distinction I think you're drawing between the organization and the message. Because so many organizations, they're very named, as I said, using a trademark analogy, has secondary meaning. When I asked you about my organization, Children Are Tues Life, you hesitated. And I gather you were looking for what the secondary meaning might be, as if I were AmericanNaziParty.org or Ku Klux Klan. What I was considering and what I was suggesting is that the Chief Administrator would have to bet, when the legislature accorded to the Chief Administrator the discretion to deal with this program, that they would have intended that her actions would be consistent with actions taken by the legislature in dealing with their own program. And so therefore, consistent with the Seventh Circuit's conclusion, that a state agency or a legislature appropriately can determine within a non-public forum that certain topics should not be included in that forum, that the Chief Administrator could consider that. That's something that hasn't been. In this particular case, we didn't reach that particular issue. Although the Chief Administrator noted the fact that there had been a number of legislative bills with Tues Life that had not passed the legislature. The Seventh Circuit's opinion, though, depends on the finding that it's a non-public forum. Yes. As Judge Smith pointed out, full discovery on the issue. Your Honor. Judgment motion, but I'm not sure that somebody kept their reasoning in that regard. Your Honor, we would submit that essentially what we have here is a stipulated record, as you had in the Ninth Circuit Stanton case. You have the array of license plates for specialty organizations that have been approved. You have the indication of what appears, what was approved on the bottom rim. The only challenge that is being made by CFF here is they have not been treated similarly to those that have been approved. This is not a case like Christ's Bride or the Fourth Circuit's decision in the airline pilot case involving the Chicago O'Hare Airport diorama. There is no uncertainty as to what the historical record is. And all that CFF is focusing on is what has been approved under this specialty program. That is set forth in the detailed allegations of the complaint, in the motor vehicle website, and in the correspondence between Dr. Rexon and Chief Administrator LaGreed. I also submit that by reviewing this record, as Judge Pisano did, and that includes the final agency decision by Chief Administrator LaGreed advising the Center for Food Action that their slogan was inappropriately approved by her predecessor, that LaGreed's reading of the statute was that the purpose of this program was to have an identifier of the organization. That has been granted to CFF in this particular case. And she acted consistent with her actions with regard to the Center for Food Action in advising this organization that they could not have a supplemental message, choose life. How would you respond to Mr. Schaffer's reliance on Rosenberger? Does that, is Rosenberger, along with the complaint here, and I keep coming back to that, and maybe unfairly so, doesn't that get you to the point that the record here establishes viewpoint discrimination, defined as Rosenberger would have it? Your Honor, I think it's a legal contention, first of all, that's been rejected by the Seventh Circuit. We kind of prefer to look to the, as august as the Seventh Circuit is, we kind of look to the Supreme Court and kind of lean that way as opposed to what the Seventh Circuit So the Seventh Circuit may have rejected it, but the Supreme Court has this case sitting out there. We maintain that their analysis of the Rosenberger opinion is more persuasive than the Ninth Circuit's opinion of Rosenberger and the Stanton decision. But beyond that, it is a legal contention. And what you have, first of all, Rosenberger was not a non-public forum. Most of the cases that are cited by CFS in their brief involve designated or public forums. This is a non-public forum. And we submit that the persuasive authority of the Second Circuit, the Stanton Circuit, Choose Life White Circuit, and all of the U.S. Supreme Court decisions, Cornelius, Perry, Education, point to the Greenboro decision regarding mailboxes, point to that the selective approval of organizations for this specialty license plate program qualifies as a non-public forum. Can we do that without discovery? To the extent that our decision rests upon the nature of the forum, and Mr. Shaffer would argue that it doesn't, but to the extent that it does, can we do that, can we reach a decision without discovery? And if we can't, then how can you prevail on procedural? Yes, I think you can looking at the statute, look at the governing regulations, look at the... But we don't know what's done. We don't know what's been done historically. Yes, we do. We do, because you can take judicial notice of the NJMDC website, which lists the small number of specialty plates that have been approved. And as I indicated... It also lists all the applications that have been denied. There is no allegation in this complaint that there has been any that has been inappropriately denied. No, but if we're going to try to find out the nature of the forum, just by looking at the website of one of the parties, don't we have to go beyond that? That's what you're alleging. We look at the website of one of the parties to see what the party has done, and then determine from that, and only that, in any judicial notice that we can take on the regs, what the nature of this forum is. Your Honor, if there was an allegation in the complaint, as there was in Christ's Bride or in the Fourth Circuit's airline pilot case, that there had been an inappropriate granting and approving, that might be a different case. In this case, the allegations of the complaint are limited to comparing this organization with the organizations that have been approved. And so the parameters of what they are challenging is set forth in this complaint. It's set forth in the complaint and in the website, and it's governed by the statute, and it's governed by the regulations. And there isn't any need to go beyond the allegations. The allegations set forth the universe of what they are challenging. And we would also submit that the persuasive authority of the Second, Ninth, and Seventh Circuits, as well as the U.S. Supreme Court, as well as findings of rulings of the Third Circuit, point to and establish that this is a non-public forum, and that there isn't any need for discovery on that issue. We would also submit that because the record reveals that there has been access provided to this forum, to this particular organization, because they have been allowed to utilize an identifier of the organization, a website that leads fully to the organizational message, which includes Choose Life, the supplemental message Choose Life, that you do not have the kind of situation that you have in most of the opinions that are cited by my opponent. You do have a reasonable determination here. It was reasonable for the chief administrator to determine, I am allowing access, I am approving a plate, I am approving a plate with the identifier that this particular organization has chosen. And in that way, she has acted in an identical fashion to the other organizations that have been approved. And on that record, this court can conclude not only that the chief administrator acted reasonably and did not engage in viewpoint discrimination within the confines of this non-public forum. We submit that's sufficient to support Judge Pisano's decision that there is no viable constitutional claim. If the court were to conclude that there is no viable First Amendment claim here, then we submit the equal protection, unbridled discretion, and vagueness claims must fall as well. First of all, unbridled discretion and vagueness generally arise in the context of where there are civil or criminal sanctions. Where is there any guidance in the statute to the administrator regarding the approval and the rejection of license plate design? The focus of the statute is on approving a member in good standing of an organization. And we would submit that the focus is on membership. Did you answer nowhere? No, I think it's, you know, under New Jersey law that one would look to what is expressed and what is implicit. What is a logotype? What is a logotype? What is a logotype? Our understanding from the legislative history is also that is set forth in the legislative history of the regulations of the agency that the intent. The legislative history of the. Of the statute. Of the legislation or something in the agency? Both. I'm not clear on what you just referred to. Both. The legislative history of this statute as well as the. It's not defined in the statute, right? It's not defined. But our reading of the legislative history is there's a clear indication and a reference to emblem. And that the intent was to have an identifier of the organization with an emblem, which would identify either simply with a design that had, you know, as certain organizations have that has no words or that would have either an abbreviation or the full name of the organization. That's what you have with the Knights of Columbus. You have a design with KFC. That's what you have with many other organizations that have been approved. That it is simply an identifier. The whole focus of this statute, as you read from beginning to end, is identifying a member of an organization that's approved by the director. An organization that we don't deem controversial. No, we're not. Especially controversial. Well, let's. Let's assume, and I know this is not your argument, but this is in fact a designated forum. Does your argument change? What do you argue? Assume this is a designated forum. We would still submit this is not viewpoint discrimination, but the. . . Then I go back to Judge Smith's question. Where does she look for guidance as to what is appropriately given access by way of association to the forum and what is not? When you look at some of these organizations, I can see someone thinking the Teamsters is a controversial organization. Or if I spent my life. . . I might think the West Point Alumni Association is controversial. Your Honor, the position that we're advancing is that the legislature has set forth that there has to be an approved. . . That the approved organization is one that has obtained IRS approval, that has a certain number of members. It's laid out in the statute. Your position is she has no discretion. No. If you meet the. . . That's the beginning of the analysis. No, as I posited, I think that it's appropriate to read this program, Empower Materia, with the other legislative programs and that it would be appropriate for her to consider what causes have been disapproved by the legislature, that there was not an intent by the legislature to authorize the director of motor vehicles to approve a cause plate that had been denied by the legislature. If choose life were not associated with the political position it advocates, if it were just the words, choose life, I mean, how could that be controversial? Your Honor, we have submitted that what is approved is the identifier of the organization. If their documentation that they submitted to the Motor Vehicle Commission demonstrated that the organization was utilizing. . . This was, in fact, the name of the organization. It had been approved by the IRS. Then it doesn't get into what is a matter of controversy unless there is a determination that this is an organization or an issue that the legislature has determined is not appropriately one that should be on license plates, similar to what the Seventh Circuit concluded in White, that it was appropriate in a non-public forum setting to say that abortion should not be debated on state license plates. It can be debated elsewhere on the car. And that also goes to the reasonableness of the action that was taken here. There is nothing to preclude this agency from selling and utilizing the license plate holders that they have available and make available on their website, which has choose life. There is nothing in this statute. There is nothing in the Chief Administrator's decision that precludes them within an inch of this license plate of having choose life. And there is nothing that precludes them from having bumper stickers on their car that says choose life. All that the Chief Administrator has determined is, as I have read the statute, as a matter of state law, I do not believe that the legislature has authorized me to approve a license plate that has more than the identifier of the organization and not to have supplemental messages like choose life, like drive out hunger. And if someone wants to have a supplemental message, they either put it outside of the license plate or they go to the New Jersey legislature and seek approval of that cause in a legislative plate. This is a state law determination that the Chief Administrator has made. This was a state law determination that CSF could have appealed to the appellate division in New Jersey. They were told they could appeal it. They also moved for permanent abstention and argued that this was an issue that should be presented to the state courts. They have abused that argument as well. They have chosen not to address the state law issues as we have framed them and that were available to them in 2004 to seek judicial review of in the state courts. They have focused entirely on the First Amendment argument and it's our position whether or not Chief Administrator LaGreed has properly read the statute, it is a reasonable interpretation. Judge Cooper and Judge Pisano concluded that the word logotype and the intent of the legislation was not clear. And Judge Pisano further concluded in his second-prong analysis that it was reasonable for Chief Administrator LaGreed to determine that given the access that was being provided to this agency, given their ability to include the Choose Life message elsewhere on the car, that it was not an unreasonable determination and it was not viewpoint discrimination to say that the supplemental message shouldn't be permitted. Okay, Ms. Shaffer, thank you very much. We really do understand your position. We've let you go, but I think now we're going back over ground we've been over before. Okay. Thank you. Thank you, Your Honor. Mr. Shaffer, given the breadth of the argument we've heard, do you really feel compelled to add anything to what you've said or to specifically think about anything Ms. Silkowitz has said for rebuttal? I hope that what I say is all going to be brand new but responsive to some points that were made by Ms. Silkowitz. So that's the idea. Yes, that is my intention. First of all, a counsel says that the letters from Ms. LaGreed should be counted in some way as the truth of the matter. The allegations are the only things that are accorded truth, not any correspondence that happens to dispute what the allegations say in the complaint. That was the point of my question. Yes, Your Honor. It's not really new. The denial of access to the forum counsel suggested was only partial denial, so it's not really a constitutional violation because they're still allowed to get a plate. We saw the same thing in the Fourth Circuit's funds at Confederate Veterans State. They were permitted to get a plate with their name on it. They simply couldn't have their logo on it, and the Fourth Circuit nonetheless said through the restriction, the legislature essentially restricted the organization's access to the license plate forum and silenced the speech of a particular speaker within the forum. Quite right. There is no authority that says a party that's otherwise allowed into a forum can have some of its speech permitted but others censored, and if there's kind of a halfway measure there, the constitutional harm is ameliorated. Furthermore, the fact that the, well, she was once the director, now she's the chief administrator, has suggested that it's really what I'm proposing here is a no-advocacy rule. Well, she says fund adoption is okay on the plate, choose life is not. Just that presentation in itself repudiates the fact that there is a no-advocacy rule. A lower-level employee is asserted to have said this thing. That's true. A representative of the Department of Motor Vehicles contacted my client and announced the reason for the denial. That was speaking on behalf of the defendants. You'll see in the paragraph 93 of the amended complaint that that is indeed the position that the defendants were taking. That's right. So it's not just your opinion. The Seventh Circuit's decision in choose life versus white, I would like to point out, not only is a conflict with the Ninth Circuit, I thought it mishandled the facts of the Stanton case. I argued that case, so I had reason to be objecting to their characterization of it. I think that the analysis is more compelling, but not only that, the Seventh Circuit mischaracterized the fact that we're even at issue in Stanton when it was characterizing it in a negative light. But I would additionally say that that case came down after a full record, full factual findings were made. They weren't just compelled to accept what was in the complaint. The drive-out hunger plate was not treated the same way as the Children First Foundation plate. That did not contain the logo of the organization. It really was an external phrase that was put onto the plate. CFS has actually put its logotype on the plate itself. We do not have an essentially stipulated record. The case law is clear that discovery must be evaluated when we're determining what a forum is and what its boundaries are. These are factual analyses. As this court stated in the Gregoire decision, any forum classification must be rooted in the facts of the particular case. Forum classification should be triggered by what a government does, not what it says. That requires an analysis of the facts and a conclusion to be drawn from it. So we would suggest, indeed, we have to go forward to the next level of the case. Well, if we do that, what about Mr. Sobowitz's argument of looking at the website, looking at the totality of the administrative record? You're saying it's not a stipulated record, but there are certain parts of it that are totally stipulated so they're not an issue. The regs, the website may be problematic, but again, it's got to do with this 12B6 issue. Right. And I would say there are things we don't know, for instance, things about what's been turned down before. The fact that we've made a viewpoint discrimination claim doesn't mean that it's not going to be necessary to look at the other actions. We're permitted to explore those other actions to support our claims, our constitutional claims. We don't have access to all those facts now, and they're inevitably going to be relevant to the determination made. Finally, she indicated that an emblem was indicated by the legislature as being what it had in mind, when actually that emblem reference is in the administrative record, not in the legislative history, and it certainly doesn't present itself as being explanatory even of the meaning of the statute at all. Moreover, we see the legislature's use of the emblem, for instance, in the Concord cancer plate where the emblem itself is announced, quoting from the statute now. These plates may contain or include an emblem indicating support for or interest in finding new methods of treating and preventing cancer. So we have the legislature indeed saying that an emblem itself is capable of communicating a point of view on a particular social issue. So I think, indeed, notwithstanding the lower court's dicta, it's clear that a logotype is a logo. This is the Children First logo that's permitted onto this platform. Thanks, of course. Can I say, since I get to leave town, as soon as this argument is over, I have to say I'm impressed with the quality of presentation on both sides. Yeah, it was really extraordinary, and I haven't seen either of you. I don't think I've seen yourself before, though. It's across the river. Maybe I've seen you before, but just to say for I'm pretty sure I haven't seen you before. I hope I see you back here. Not on this case. We hope not. But you're both really extraordinary advocates. You listen to questions. You answer the question that's being asked, which is a rarity these days. Incredibly well prepared. And I really commend both of you, no matter how much this comes out. It's really been a joy to hear both arguments. Thank you, Judge McKee, and thank the panel as well. Take a brief recess.